IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:17-cr-213-RDA |
| | ) | |
| DAVID H. MILLER, | ) | |
| | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on *pro se[1]* Defendant David H. Miller's Motion to Vacate, Set Aside or Correct Verdict (Dkt. 302); Motion for Discovery and Appointment of Public Defender (Dkt. Nos. 314; 315); Motions for an Evidentiary Hearing and Appointment of Counsel (Dkt. Nos. 320; 321); Motion for Discovery and Appointment of Public Defender (Dkt. 323); and Motions for a Discovery Hearing and Appointment of Public Defender (Dkt. Nos. 324; 325). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with the government's Memoranda in Opposition (Dkt. Nos. 313; 317; 330), and Defendant's Reply (Dkt. 318), this Court DENIES the Motions to Appoint Counsel; DENIES the Motions for Discovery; DENIES the Motion for an Evidentiary Hearing; and DENIES and DISMISSES the Motion to Vacate, Set Aside or Correct Verdict for the reasons that follow.[2]

---

[1] It is worth noting that Defendant is a law school graduate and worked as an attorney. *See* Dkt. 194 ¶¶ 171, 176 (noting that Defendant graduated from George Mason University School of Law and that Defendant was employed as general counsel).

[2] Defendant also has a pending Motion for Reconsideration of the Court's February 2, 2024 Order directing Defendant's prior counsel, Drewey Hutcheson, to provide an affidavit addressing

## I.  FACTUAL BACKGROUND

The factual background set forth here is drawn from the Fourth Circuit's opinion in *United States v. Miller*, 41 F.4th 302 (4th Cir. 2022).  The facts of this case are as follows:

From 2011 to 2014, Defendant worked as the General Counsel and Chief Compliance Officer at SkyLink Air and Logistic Support ("Skylink").  *Id.* at 306.  During this period, Defendant and his wife, Lynn Miller ("Mrs. Miller"),[3] created two fake law firms (Federal Legal Associates and the Straile Group).  *Id.*  Then, as a SkyLink employee, Defendant "exchanged" emails with individuals at these "bogus" firms and purported to hire them to perform work for SkyLink.  *Id.*  Many of those emails were later traced to an IP address for Defendant's home.  On several occasions, Defendant sent emails from his *own* email addresses that were purporting to be from fictitious persons at Federal Legal Associates or the Straile Group.  *Id.*

The emails often purported to contain invoices for work alleged to have been performed for SkyLink.  *Id.*  Templates for those invoices were later discovered on Defendant's SkyLink computer.  *Id.*  Payments from SkyLink to these fake firms were later traced to bank accounts

---

the claims in the Motion to Vacate. Dkt. 309.  Because Mr. Hutcheson has filed the Declaration, the Motion for Reconsideration is now moot.  In any event, the Court's February 2, 2024 Order was appropriate, because "a petitioner who claims ineffective assistance of counsel in a habeas petition waives the protection of attorney-client privilege over information that is relevant to those claims." *LaBorde v. Virginia*, 2011 WL 2358510, at *2 (E.D. Va. June 9, 2011); *see also Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions."); *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) ("Given the ample, unanimous federal authority on point, we hold that when a habeas petitioner claims ineffective assistance of counsel, he impliedly waives attorney-client privilege with respect to communications with his attorney necessary to prove or disprove his claim.").  Accordingly, even if the motion was not now moot, the Motion for Reconsideration would still be denied.

[3] As recognized in her own criminal case, Mrs. Miller is sometimes referred to as "Linda Diane Wallis" and sometimes as "Lynn Wallis Miller." *United States v. Wallis*, Case No. 15-cr-285 (E.D. Va.).

created by Mrs. Miller.  *Id.*  SkyLink ultimately paid out $368,350 to these fake entities before it discovered the expenditures and fired Defendant on May 6, 2014.  *Id.*

Shortly before he became SkyLink's General Counsel, Defendant founded the Community College Consortium on Autism and Intellectual Disabilities ("CCCAID").  *Id.* at 307.  For several years, Defendant worked to solicit funding from colleges, Congress, and private individuals.  *Id.* All told, CCCAID raised over $783,000.  *Id.*  Mrs. Miller was also involved in CCCAID and, eventually, Defendant suggested hiring Mrs. Miller as an unpaid executive director.  *Id.*  Although initially rejected by other cofounders, Mrs. Miller was eventually hired.  *Id.*  Once Mrs. Miller obtained control of CCCAID's bank account, she immediately began spending funds for the Millers' personal expenses.  *Id.*  Ultimately, nearly 80% of CCCAID assets – $619,025 – was spent directly on personal expenses for the Millers or transferred to bank accounts that they controlled (including the bank accounts for Defendant's bogus law firms).  *Id.*

Around the same time, Defendant was working to have Mrs. Miller selected as treasurer for Virginia State Senator Richard Saslaw's reelection campaign (the "Saslaw Campaign").  Once she was selected for that volunteer position and obtained access to the campaign checkbook, Mrs. Miller used the campaign checkbook to pay out over $633,000 into the same bank accounts controlled by the Millers.  *Id.*  When Senator Saslaw discovered the discrepancies, he terminated Mrs. Miller on September 5, 2014.

After the fact, government witnesses traced how money siphoned from SkyLink, CCCAID, and the Saslaw Campaign was transferred and spent.  *Id.*  This included how the money was generally transferred into accounts that the Millers controlled, often by shuffling the funds between accounts, before ultimately being used to pay the Millers' personal expenses.  *Id.*  Of note, when SkyLink fired Defendant, the balance in the Millers' joint bank account was $462.56 and, despite

3

neither of the Millers holding a paying job, the joint account paid out over $165,000 to cover various personal expenses. *Id.*

Importantly, Defendant has acknowledged that he created the fake Federal Legal Associates and the Straile Group entities and asserted that "the ends justified the means." *Id.* at 308.  Defendant has also admitted he had hatched a "deliberate" and "unethical" "scheme to deceive SkyLink." *Id.*  He also admitted that he knew that the fraudulently obtained funds would "eventually" be transferred to the Millers' joint bank account so that he and Mrs. Miller could spend them. *Id.*

## II.     PROCEDURAL BACKGROUND

The government initiated two criminal proceedings based on the above-mentioned facts: a criminal case against Mrs. Miller in 2015 and then a criminal case against Defendant in 2017. The procedural backgrounds of both proceedings are relevant here.

### A.     The Proceedings Against Mrs. Miller

On October 15, 2015, Mrs. Miller pleaded guilty to one count of conspiracy to commit wire fraud against SkyLink, in violation of 18 U.S.C. § 1349. *See United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 7 at 1 (Plea Agreement).  In her signed Statement of Facts, Mrs. Miller identified her coconspirator as "D.M." *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 8 at 2 (Statement of Facts).  Mrs. Miller also admitted to engaging in a scheme to defraud the Saslaw Campaign and CCCAID. *Id.* at 4-6.

On March 18, 2016, currently inactive Senior District Judge T.S. Ellis, III sentenced Mrs. Miller to a prison term of 56 months to be followed by a three-year term of supervised release and ordered restitution of $1,429,599. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 30 at 2 (Judgment in a Criminal Case).  Judge Ellis also issued a Consent Order of Forfeiture

4

containing a money judgment of $1,429,599 against Mrs. Miller. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 29 at 2 (Consent Order of Forfeiture). Pursuant to that Order, Mrs. Miller forfeited her interest in properties located at 4551 Forest Drive, Fairfax, Virginia (the "Fairfax Property") and at 2896 Indian Harbor Drive, Unit 3, Bethany Beach, Delaware (the "Bethany Beach Property"). *Id.* The Order further authorized the Attorney General, or a designee, to seize and otherwise maintain custody and control of the forfeited properties. *Id.*

On April 18, 2016, Defendant filed a petition for interest in the forfeited property in Mrs. Miller's case, seeking an ancillary hearing and an amended order to recognize his interest in the Fairfax and Bethany Beach Properties. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 36 at 2. Defendant argued that he was the sole and current owner of both properties, and that Mrs. Miller did not have an interest in the properties to forfeit. *Id.* After many agreed-upon continuances by the parties, Judge Ellis held several hearings on forfeiture and directed the parties to submit several rounds of supplemental briefing. Supplemental briefing on the issue of forfeiture was completed on July 14, 2017, but, on September 20, 2017, a federal grand jury returned an indictment against Defendant and the issue was unresolved pending resolution of the criminal proceedings against Defendant.[4]

B.     The Proceedings Against Defendant

On September 20, 2017, a grand jury issued an indictment charging Defendant with: (i) conspiracy to commit mail and wire fraud (Count 1); (ii) conspiracy to launder monetary

---

[4] Ultimately, after Defendant was convicted in these proceedings, Judge Ellis granted the government's motion for a final order of forfeiture and dismissed Defendant's petition. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. No. 117. A Final Order of Forfeiture issued on April 15, 2020. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. 118. Defendant appealed and, on November 22, 2022, that appeal was dismissed for failure to prosecute. *United States v. Linda Diane Wallis*, No. 15-CR-285, Dkt. 132 (Fourth Circuit Order dismissing appeal).

instruments (Count 2); (iii) mail fraud (Counts 3-6); (iv) wire fraud (Counts 7-10); and (v) aggravated identity theft (Counts 11-12). Dkt. No. 1 at 1 (Indictment). The Indictment also contained a forfeiture notice as to the net proceeds derived from the sale of the Fairfax Property and Bethany Beach Property. *Id.* at 37.

On September 29, 2017, Defendant appeared before Judge Ellis for his arraignment. Dkt. 15. At the arraignment, the parties agreed that the case was complex and that trial should be set for February 20, 2018. *Id.* Thereafter, Defendant signed a speedy trial waiver, and an Order issued designating the case complex, such that a trial date beyond the ordinary speedy trial timeframe was appropriate. Dkt Nos. 18; 21. The parties later jointly agreed to continue trial until May 1, 2018. Dkt. Nos. 29; 30.

On January 3, 2018, Defendant filed a Motion for a Bill of Particulars challenging the government's basis for charging Defendant with a conspiracy with respect to the Saslaw Campaign or CCCAID funds. Dkt. 25. Simultaneously, Defendant also filed a Motion for Release of Seized and Retained Assets. Dkt. 26. In that Motion, Defendant argued that the funds related to the Fairfax and Bethany Beach properties were necessary to his legal defense and household expenses. Dkt. No. 26 at 1. After a hearing and supplemental briefing, Judge Ellis denied the Motion for Release of Assets in a Memorandum Opinion and Order. Dkt. Nos. 44; 45. In his Opinion, Judge Ellis held that there was probable cause to believe that the properties were "traceable" to the fraudulent schemes, such that the properties were "tainted" and not substitute assets. *Id.* at 26. Accordingly, Judge Ellis held that the properties could be restrained prior to trial. *Id.*

Defendant then appealed that Memorandum Opinion. Dkt. 46. The case was then stayed pending the Fourth Circuit's resolution of the appeal. Dkt. 49. On December 30, 2018, the Fourth Circuit affirmed the denial of the Motion to Release the Seized and Retained Assets. *United States*

*v. Miller*, 911 F.3d 229 (4th Cir. 2018). The Fourth Circuit held that there was sufficient probable cause to find that Defendant used fraudulently obtained and laundered funds to make mortgage payments, property tax payments, and improvements to the properties such that the properties were "involved in" and "traceable to" Defendant's wire fraud and money laundering charges. *Id.* at 235. On January 11, 2019, the Fourth Circuit's mandate issued, and the case was returned to this Court. Dkt. 54.

Thereafter, Defendant's retained counsel moved to withdraw from the representation. Dkt. 55. Judge Ellis granted the motion to withdraw, found Defendant indigent, and appointed Drewry B. Hutcheson to represent Defendant pursuant to the Criminal Justice Act. Dkt. Nos. 56; 57. On March 29, 2019, Judge Ellis held a status conference at which the parties agreed to a September 24, 2019 trial date, as the case had previously been designated complex and there was new counsel involved in the case. Dkt. Nos. 58; 61.

In preparation for trial, Mr. Hutcheson filed several motions. First, Mr. Hutcheson filed a Motion for Disclosure of Exhibits and Transcripts, seeking early production of Jencks Act and *Giglio* material. Dkt. 63. Second, Mr. Hutcheson filed an *ex parte* Motion for Issuance of Subpoenas, seeking to direct the custodian of records for SkyLink to produce certain records. Dkt. 66. Third, Mr. Hutcheson filed an *ex parte* Motion Directing the U.S. Marshals Service to Serve the Subpoenas. Dkt. 69. Judge Ellis denied the motions relating to the subpoenas as overbroad but permitted counsel to renew his request. Dkt. 70. After a hearing, Judge Ellis denied the Motion for Early Production, based on the parties' agreement to follow regular practices, and denied the Motion for a Bill of Particulars, filed by prior counsel. Dkt. 72.[5]

---

[5] At the hearing, Mr. Hutcheson asserted that he was no longer arguing that the government's decision to charge Defendant with a single conspiracy to defraud three entities required a bill of particulars but continued to maintain that the Indictment failed to provide

Following the hearing, Mr. Hutcheson submitted a request for an investigator, which was granted. Dkt. Nos. 76; 77. Additionally, on September 4, 2019, Mr. Hutcheson's request to subpoena records from SkyLink was granted. Dkt. 81.

In preparation for trial, Mr. Hutcheson submitted a motion *in limine* seeking to exclude information regarding: (i) Defendant's outside income in violation of SkyLink policies; (ii) Defendant's failure to file tax returns; (iii) Defendant's failure to pay a subcontractor; (iv) Defendant's alleged violation of the Foreign Agents Registration Act; and (v) Defendant's alleged sharing of SkyLink information with a third party. Dkt. 100. Mr. Hutcheson also filed a witness list, objections to the government's exhibit list, and proposed jury instructions. Dkt. Nos. 102; 103; 107. After a hearing on the motion *in limine*, Judge Ellis ruled that the government would have to seek permission before introducing any evidence regarding the Foreign Agents Registration Act or the alleged sharing of confidential information, and that the parties would have to prepare an instruction regarding SkyLink's corporate policies on outside income. Dkt. 108. At the same pretrial conference, Judge Ellis inquired whether any party intended to call Mrs. Miller as a witness, because there were potential privilege issues relating to her testifying. Dkt. 239 at 14:2-6. During that hearing, both parties denied that they intended to call Mrs. Miller, but suggested it would be wise to have Mrs. Miller present. *Id.* at 14:7-12. Both parties, however, listed Mrs. Miller on their final witness lists. Dkt. Nos. 103; 104. Mr. Miller was present in the courtroom for this discussion. Dkt. 101.

A federal jury was selected and empaneled on September 24, 2019, and began hearing evidence. Dkt. 110. The government called a total of 29 witnesses and Mr. Miller testified in his

---

sufficient notice of the government's factual allegations as required to permit adequate notice and to prepare for trial. Dkt. 72.

own defense during the 8-day trial.  At the beginning of the trial, Judge Ellis again raised the matter of Mrs. Miller testifying and whether Mrs. Miller had any privileges that she could invoke to prevent her testimony; the parties again responded that they did not intend to call Mrs. Miller as a witness.  Dkt. 255 at 7:24-9:2.  Defendant was present for that discussion.  Dkt. 110.

On the third day of trial, Mr. Hutcheson reported to Judge Ellis: "Mr. Miller has informed me that he would like to have his wife brought here to be a witness." Dkt. 241 at 8:7-9.  Judge Ellis responded: "That's fine . . . .  I will make arrangements to have her brought from Alderson, if you wish to call her." *Id.* at 8:14-22.  Judge Ellis then issued an order requiring that Mrs. Miller be brought to Alexandria by the U.S. Marshals Service so that she would be available to testify if called.  Dkt. Nos. 112 (original order); 114 (amending dates).

On September 27, 2019, Mr. Hutcheson submitted Defendant's Exhibit List of proposed exhibits to be introduced during trial.  Dkt. 115.  On October 1, 2019, witnesses were cross-examined in a way that implied that Mrs. Miller committed mortgage fraud and government counsel suggested that Mrs. Miller's counsel needed to be aware of that line of questioning.  Dkt. 243 at 41:25-42:12.  During that discussion, Mr. Hutcheson noted that he had been in touch with Todd Richman of the Office of the Federal Public Defender, who represented Mrs. Miller. *Id.* at 43:14-15.

Later that day, Mr. Richman and Shannon Quill, also of the Office of the Federal Public Defender, appeared and informed Judge Ellis that they still represented Mrs. Miller and that they had been advised by Mr. Hutcheson that he may call Mrs. Miller as a witness. *Id.* at 196:8-20. Mr. Richman informed Judge Ellis that Mrs. Miller would object to testifying based on her Fifth Amendment privilege, because "we understand that her testimony would likely implicate matters on which we believe she still has a Fifth Amendment right because they were matters she was not

9

prosecuted on, and she believes her testimony would cause her to have to incriminate herself." *Id.* at 198:22-199:2; *Id.* at 196:21-25.   First, Mr. Richman noted that Mrs. Miller would have a Fifth Amendment right if asked about the alleged mortgage fraud.  *Id.* at 200:9-12.   Second, Mr. Richman noted that Mrs. Miller would invoke her spousal immunity privilege to not be forced to testify adversely to her spouse.  *Id.* at 200:12-18.  Judge Ellis clarified that the Millers were still married.  *Id.* at 203:12-13.  At the end of the day, Judge Ellis asked the parties to be prepared to argue the matter the next day.  At that point, the government also noted that Mrs. Miller may have a Fifth Amendment privilege regarding information related to her guilty plea, statement of facts, or statements to federal agents that would put her at risk of being prosecuted for perjury.  *Id.* at 273:21-274:19.  The government also noted that it had reason to believe that Mrs. Miller had not been completely truthful with the government because she failed a polygraph examination.  *Id.* at 274:19-275:4.

On October 2, 2019, before resuming trial, Mr. Hutcheson indicated that he had been unable to speak with Mrs. Miller based on the advice of her counsel. Dkt. 244 at 4:22-25.  Based on his inability to speak with Mrs. Miller as well as her assertion of two privileges, Mr. Hutcheson indicated that he had determined not to call Mrs. Miller, but that Defendant disagreed with the decision.  *Id.* at 4:25-5:5.  Judge Ellis indicated that Mr. Hutcheson did not need to make that determination until the government rested.  *Id.* at 6:1-10.

After calling its final witness, the government rested. Dkt. 122.  Mr. Hutcheson moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, specifically noting deficiencies in the government's evidence with respect to the identity theft charges.  *Id.* Judge Ellis denied that motion.  *Id.*  Mr. Hutcheson then called Mrs. Miller as the first defense witness.  Dkt. 244 at 113:21-22.  After Mrs. Miller was called, Mr. Richman asserted the Fifth

Amendment and spousal immunity privileges on Mrs. Miller's behalf. *Id.* at 114:2-13. Judge Ellis then determined that Mrs. Miller had properly invoked both of her privileges such that she was not required to testify. *Id.* at 114:14-115:15 (spousal privilege); *id.* at 117:25-118:3 (Fifth Amendment privilege). Upon the jury's return from the recess, Defendant was called to testify by Mr. Hutcheson. Dkt. 245.

On October 4, 2010, the jury returned guilty verdicts as to Counts 1 through 10, but hung as to Counts 11 and 12 (the identity theft charges). Dkt. 129. The jury then returned a separate, special verdict as to forfeiture, finding that the Fairfax and Bethany Beach properties were proceeds or derived from proceeds of fraud and that the properties were involved in the money laundering offense. Dkt. 130. Following trial, Counts 11 and 12 were dismissed. Dkt. Nos. 134; 135.

On October 9, 2019, Defendant moved for a change of counsel, but his motion failed to specify a reason for the request. Dkt. 139. Judge Ellis denied the motion because "Defendant offers no reason for the request" and because "defendant may not request new counsel merely because he is unhappy with the result of trial." Dkt. 145. Despite his representation by counsel, Defendant proceeded to file a "*pro se*" Motion for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure only with respect to Count 2 of the Indictment (money laundering). Dkt. 154 at 4 (indicating that the motion was prepared by Defendant "*pro se*"). Defendant argued that the government had intimidated Mrs. Miller into invoking her privileges and that Mrs. Miller should have been advised that the statute of limitations regarding any potential mortgage fraud had expired. *Id.* On November 12, 2019, Defendant filed an Amended Motion pursuant to Rule 33 arguing that the government committed prosecutorial misconduct by intimidating Mrs. Miller and that the weight of the evidence did not support his conviction on Count 2. Dkt. 165. On November

11

13, 2019, Judge Ellis struck the motion for a new trial because Defendant purported to file the motions *pro se* instead of by his appointed counsel. Dkt. 166.

On November 19, 2019, Defendant filed a Second Motion for a New Trial, through his attorney, Mr. Hutcheson. Dkt. 169. The Second Motion reiterated Defendant's arguments that the government had committed misconduct by intimidating Mrs. Miller and that there was insufficient evidence to support his conviction on Count 2. *Id.* Judge Ellis denied the motions for a new trial. Dkt. 180.

Mr. Hutcheson then filed a Motion for Reconsideration on Defendant's behalf, arguing that: (i) the government had committed misconduct and an affirmative misrepresentation; (ii) the Court allowed the government to violate Defendant's rights; (iii) the Court's spousal privilege reasoning was flawed; (iv) that grand jury testimony proved the government misrepresented the money laundering charge to the grand jury; (v) that the Court's money laundering analysis was flawed; (vi) that CCCAID was a private for-profit entity owned by Mrs. Miller; (vii) that the Court erred with respect to its determination regarding the mortgage on the Fairfax Property; and (viii) that the Court erred in giving a willful blindness instruction. Dkt. 184. On January 6, 2020, Judge Ellis denied the motion for reconsideration. Dkt. 190.

On January 24, 2020, Judge Ellis sentenced Defendant to 88 months in prison to be followed by a three-year term of supervised release. Dkt. 209. Judge Ellis also entered a final order of forfeiture with respect to the Fairfax and Bethany Beach Properties. Dkt. 206.

On February 7, 2020, Defendant noticed his appeal. On July 19, 2022, the Fourth Circuit affirmed Defendant's convictions. *United States v. Miller*, 41 F.4th 302 (4th Cir. 2022).

On October 18, 2023, Defendant filed his Motion to Vacate, Set Aside or Correct Verdict after the Fourth Circuit decision. Dkt. 302.[6] U.S. District Judge Leonie M. Brinkema directed the government to respond. Dkt. 304.[7] On January 18, 2024, the case was reassigned to this District Judge. Defendant has subsequently filed several motions for appointment of counsel, discovery, and an evidentiary hearing. Dkt. Nos. 314; 315; 320; 321; 323; 324; 325. The government has opposed Defendant's Motions. Dkt. Nos. 313; 317; 330.

### C.     Affidavit of Mr. Hutcheson

Pursuant to a Court Order, Mr. Hutcheson was directed to file an affidavit related to his representation of Defendant as it pertains to the allegations contained in the Motion to Vacate. Dkt. 307. Mr. Hutcheson provided the following information pursuant to his affidavit (Dkt. 310):

First, Mr. Hutcheson recounted his experience as a member of the Virgina Bar since 1982 and as a member of the CJA Panel of this Court since 1984. *Id.* at 1.

Second, Mr. Hutcheson averred that, upon his appointment in this case, he immediately began: reviewing discovery, conferring with Defendant, and communicating with the government. *Id.* His records reflect that he spent 150 hours reviewing records, 83 hours conferring with various persons, and 144 hours researching and drafting court filings. *Id.*

Based on his review of the discovery materials, Mr. Hutcheson concluded that, although Mrs. Miller "made statements revealed in discovery that denied [Defendant's] involvement in [the Saslaw Campaign and CCCAID frauds]," "[i]t was my professional opinion that a jury would not

---

[6] The time to file a Motion to Vacate is one-year from when the conviction becomes final. 28 U.S.C. § 2255(f). Defendant's convictions became final 90-days after the Fourth Circuit's opinion issued; therefore, his Motion to Vacate is timely.

[7] To the extent Defendant views Judge Brinkema's Order as reflecting a consideration of the merits of Defendant's Petition, Defendant is incorrect.

find that denial credible given the other frauds in which they participated together." *Id.* at 2.  Mr. Hutcheson noted that, in his view, the government had "overwhelming evidence of" Defendant's guilt. *Id.* at 4.

Mr. Hutcheson represents that he had negotiated a plea deal for Defendant with the government by which Defendant could admit guilt solely based on the SkyLink fraud, which would permit Defendant to continue to argue that he was not involved with the Saslaw Campaign or CCCAID frauds.  *Id.* at 5.  This would also permit Defendant to continue to argue that his properties were not forfeitable.  *Id.*  Mr. Hutcheson advised Defendant that Mr. Hutcheson's opinion was reinforced by the Fourth Circuit's 2018 opinion regarding whether the properties were involved in or traceable to the alleged frauds.  *Id.* ("He had already had one chance to test the water and he was unsuccessful.").

Specifically, Mr. Hutcheson avers that he was familiar with all of Mrs. Miller's FBI 302 reports and handwritten statements, and that he had reviewed them in discovery.  *Id.* at 6.  Mr. Hutcheson also asserts that he thoroughly reviewed Mrs. Miller's plea agreement, statement of facts, and sentencing transcript.  *Id.*  Mr. Hutcheson asserts: "I did not want to call Lynn Miller. David thought she would help absolve him from the other than Skylink charges.  But, I was concerned that, having pleaded guilty to conspiring **with him** she would bury us on the initial fraud counts."  *Id.* (emphasis in original).  Mr. Hutcheson also reports having concerns with Mrs. Miller's credibility.  *Id.*  Despite his concerns, Mr. Hutcheson was "reluctantly going to call her," until Mrs. Miller invoked her Fifth Amendment and spousal privileges through her counsel.  *Id.* at 7.  Mrs. Miller's counsel refused Mr. Hutcheson access to Mrs. Miller.  *Id.*

Mr. Hutcheson also reports that he consulted with Defendant's prior counsel, Bill Cowden, on multiple occasions and reviewed materials related to Mr. Cowden's representation.  *Id.* at 8.  In

14

particular, Mr. Hutcheson and Mr. Cowden discussed that, if Defendant pleaded guilty to the SkyLink fraud, but avoided a money laundering conviction he would be permitted to argue proportionality with respect to the Bethany Beach property. *Id.*

Mr. Hutcheson points out that his strategy with respect to the aggravated identity theft charges was successful because the jury hung on those counts and the government ultimately dismissed them. *Id.* Mr. Hutcheson also stresses that he was able to obtain a favorable sentence for Defendant – well below the guideline range of 210-262 months. *Id.* at 9.

Mr. Hutcheson notes that, as a lawyer, Defendant was more involved in his criminal defense than an ordinary defendant, but that the work product that Mr. Hutcheson submitted was still based on work that Mr. Hutcheson himself had done. *Id.* at 10-11.

### III.   STANDARD OF REVIEW

Pursuant to § 2255, a federal prisoner may collaterally challenge their conviction through a motion to vacate, set aside, or correct the sentence. 28 U.S.C.§ 2255.  "A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrate: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Bernardez v. United States*, 2017 WL 3599641, at *1 (E.D. Va. Aug. 18, 2017).  To obtain relief, the petitioner must prove their claim by a preponderance of evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).  Such a collateral attack involves a "significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1981).

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect

thereto." 28 U.S.C. § 2255(b).  Thus, an evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue.  *United States v. Witherspoon*, 231 F.3d 923, 925-27 (4th Cir. 2000); *see Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970).  But not every case requires an evidentiary hearing, especially where it is "so clear that counsel's purported deficiencies did not prejudice" the defendant.  *United States v. Terry*, 366 F. 3d 312, 315 (4th Cir. 2004).

Where a defendant argues ineffective assistance of counsel, the standard for attorney performance is one of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A judge must determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.  To demonstrate ineffective assistance, a defendant must show both that counsel's conduct was deficient and that the deficient performance prejudiced the defense.  *Id.* at 687.  The evaluation of the counsel's performance must be "highly deferential."  *Umar v. United States*, 161 F.Supp.3d 366, 375 (E.D. Va. 2015).  Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation."  *Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978) (citation omitted); *see also Strickland*, 466 U.S. at 687–91.  Only in "relatively rare situations" will a § 2255 motion establish that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690).

## IV.  ANALYSIS

Here, Defendant raises several predicate issues, including motions for appointment of counsel and motions for discovery that must be addressed before the Court considers the Motion to Vacate or the Motion for an Evidentiary Hearing.  Each of Defendant's Motions will be addressed in turn.

### A.  Appointment of Counsel

Defendant first seeks appointment of a Federal Public Defender.  Dkt. Nos. 315; 321; 325. Generally, the Supreme Court has recognized that convicted defendants have no inherent constitutional right to counsel when launching a collateral attack on their convictions. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995).  Rather, defendants are only entitled to appointment of counsel in exceptional circumstances where required by the interests of justice.  *See United States v. Riley,* 21 F. App'x 139 (4th Cir. 2001); 18 U.S.C. § 3006A(a)(2).

Defendant, who went to law school and was a lawyer, has not made any showing that there are exceptional circumstances present here.  In the briefing on the Motion, and elsewhere in this litigation, Defendant has made arguments that are based on statutes, case authority, and constitutional principles that demonstrate his necessary grasp of the issues that he seeks to raise. Accordingly, this is not the kind of exceptional case in which appointment of counsel is warranted.[8]

---

[8] To the extent that Defendant specifically requests the appointment of a Federal Public Defender, his request is also ill-founded.  As Defendant knows, the Office of the Federal Public Defender represented Mrs. Miller and assisted her in asserting her privileges during Defendant's trial.  Therefore, the Office of the Federal Public Defender has a conflict that would preclude its appointment to represent Defendant.

## B. Discovery Requests

A habeas petitioner is "not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, discovery requests are granted upon a showing of good cause. *Id.* at 904. In other words, a petitioner must establish a *prima facie* case of relief to give the court reason to believe that the alleged facts, if fully developed, demonstrate that the petitioner is entitled to relief. *United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004). If the trial court believes there is good cause for discovery, it may "utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.'" *Harris v. Nelson*, 394 U.S. 286, 300 (1969) (citations omitted). A petitioner seeking discovery may not embark on a fishing expedition in hope of finding damaging evidence. *Hall v. United States*, 30 F.Supp.2d 883, 900 (E.D. Va. 1998); *see also Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence."). Moreover, courts may deny discovery requests that are too broad or unspecific. *United States v. Wilson*, 901 F.2d 378, 382 (4th Cir. 1990). Additionally, a defendant must not only describe with particularity the information that he seeks but must explain how such items are relevant and make a preliminary showing that they would be exculpatory. *United States v. Jose*, 2021 WL 2260377, at *2 (D. Md. June 3, 2021); *Hall v. United States*, 30 F. Supp. 2d 883, 899 (E.D. Va. 1998).

Here, Defendant has not met his burden to establish good cause for discovery.[9] Defendant seeks twenty-five different categories of information from Mr. Hutcheson that represent precisely the kind of fishing expedition against which the Fourth Circuit has warned. *Wilson*, 901 F.2d at

---

[9] Defendant has also not established a *prima facie* case for relief, but because that question is better addressed with respect to the government's motion to dismiss, the Court will address it *infra*.

381.  Moreover, Defendant fails to articulate in any detail how such items would be materially relevant.  Defendant's broad requests go beyond a request for mere production of documents and are more in the nature of interrogatories seeking to compel Mr. Hutcheson to create a response. *See* Dkt. 314 at 6 (seeking a list of all criminal cases in which Mr. Hutcheson was the lead attorney at trial).  Additionally, Defendant fails to explain why certain alleged discovery materials are not in his own possession.  Defendant asserts that Mrs. Miller is in possession of a hard drive that contains email communications between Defendant and Mrs. Miller.  *Id.* at 7.  Yet, Defendant never explains why, if those email communications are in exchanges involving him, he does not have access to those emails.  Moreover, Defendant does not explain why Mrs. Miller, if she is as willing and enthusiastic to support him as he claims, would require a subpoena to turn over helpful information.  Many of the documents that Defendant seeks are also available on the Public Access to Court Electronic Records ("PACER").  *Id.* at 6-7 (for example, seeking access to "Motions," "jury instructions," the "sentencing memorandum").  Thus, Defendant's requests are broader than similar requests that have been rejected as without good cause by district court judges within this Circuit.  *See, e.g.*, *Jose*, 2021 WL 2260377, at *2 (denying discovery requests that sought "reproduction of the entire file").  Accordingly, the Motion for Discovery will be denied.

### C. § 2255 Motion

Defendant characterizes his 2255 Motion as raising a single issue: whether Mr. Hutcheson's failure to personally interview and investigate the veracity of Mrs. Miller's statements constitutes ineffective assistance of counsel.  Dkt. 302 at 2.  In reality, his 2255 Motion goes somewhat further to attack: (i) the decision not to challenge certain aspects of the Indictment; (ii) the decision not to challenge the grand jury process; (iii) the decision to only move for a judgment of acquittal with respect to Counts 11 and 12; (iv) failing to raise an objection about an alleged

denial of his right to compulsory process with respect to Mrs. Miller; (v) failing to request a question by question approach to Mrs. Miller's proposed testimony; (vi) failing to object to certain jury instructions; and (vii) accusing Mr. Hutcheson of lacking substantive knowledge regarding a criminal trial. Dkt. 302.

As described *supra*, an ineffective assistance of counsel claim must satisfy the two-pronged *Strickland* test by establishing that (1) the counsel's performance fell below an ordinary standard of reasonableness and that (2) the deficient performance caused the defendant actual prejudice. *Strickland*, 466 U.S. at 687. If the "defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). Overall, courts should "strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Strickland*, 466 U.S. at 697.

On the performance prong, the petitioner must demonstrate that the counsel's performance fell short of the objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. In other words, the petitioner must demonstrate that the counsel's performance was not reasonably effective. *Marzullo v. State of Md.*, 561 F.2d 540, 543 (4th Cir. 1977) (citing *McMann v. Richardson*, 397 U.S. 759 (1970)). The trial court must perform a broad and flexible inquiry to consider whether the attorney's performance was reasonable given the circumstances. *Marzullo*, 561 F.2d at 544. In performing this inquiry, there is a "strong presumption" that the counsel's actions fall within the "wide range of reasonable professional assistance." *Roane*, 378 F.3d at 404. When counsel has "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.*Id.* Thus, "strategic choices made after less than

20

complete investigation" are deemed reasonable only where "reasonable professional judgments support the limitation on investigation." *Wiggins v. Smith*, 539 U.S. 510, 512 (2003) (citing *Strickland*, 466 U.S. at 690-91). In essence, the attorney must competently use their skill and knowledge to produce a just and reliable trial outcome. *See Powell v. Alabama*, 287 U.S. 45, 68-69 (1932).

On the prejudice prong, the counsel's deficient performance must have a prejudicial effect on the defense to "constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 691. In particular, the petitioner must prove that there is a reasonable probability that the outcome would be different but for the counsel's deficient performance. *Luck*, 611 F.3d at 190. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Kasi v. Angelone*, 300 F.3d 487, 504 (4th. Cir. 2002). Aside from conflicts of interest claims, actual ineffectiveness claims generally require that the petitioner "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. The petitioner cannot satisfy this test by making conclusory statements or showing that the errors had some "conceivable effect on the outcome of the proceeding." *Id.*; *Hurdle v. United States*, 2007 WL 1555779, at *3 (E.D. Va. May 22, 2007).

### i. Prejudice

The Court first assesses whether Mr. Hutcheson's allegedly deficient performance had a prejudicial effect on Defendant, because, if Defendant cannot meet the prejudice prong, the Court need not consider performance. *Fields*, 956 F.2d at 1297. Defendant relies almost entirely on his Motion itself to establish prejudice. Dkt. 318 at 16. In his Motion, Defendant discusses prejudice solely with respect to the effect of Mrs. Miller not testifying. Dkt. 302 (comparing government arguments to information relayed by Mrs. Miller). Accordingly, the Court will first consider

prejudice to Defendant with respect to Mrs. Miller's purported testimony and then will turn to Defendant's other myriad allegations

a. Alleged Prejudice with Respect to Mrs. Miller

To begin with, Defendant can show no prejudice by Mr. Hutcheson's purported failure to interview Mrs. Miller, where the record is clear that Mrs. Miller – based on advice of her counsel – refused to be interviewed by Mr. Hutcheson.  Dkt. 244 at 4:22-25; Dkt. 310 at 7.  As district judges within this District have held: "A witness is not the exclusive property of either government or defendant, and an accused is entitled to have access to any prospective witness.  However, the witness may refuse to be interviewed." *Hillman v. Hinkle*, 114 F. Supp. 2d 497, 504 (E.D. Va. 2000).  Despite Mr. Hutcheson's inability to interview Mrs. Miller, and in deference to his client, Mr. Hutcheson still called Mrs. Miller to the stand so that Defendant could have what he perceived to be the benefit of her testimony.  Dkt. 244 at 113:21-22.  Yet, at trial, Mrs. Miller was far from being the cooperative witness who was eagerly anticipating her testimony to help her husband as Defendant maintains.  Rather than eagerly testify, Mrs. Miller invoked both her spousal testimonial privilege and Fifth Amendment privilege.  *Id.* at 114:2-13.  And Judge Ellis determined that the privileges were properly invoked.  *Id.* at 114:14-115:15 (spousal privilege); *id.* at 117:25-118:3 (Fifth Amendment privilege).  The Fourth Circuit also held that, on direct appeal, Defendant failed to demonstrate that any alleged error with respect to Mrs. Miller's testimony "affected the outcome of his proceedings." *Miller*, 41 F.4th at 311.

In each of the prior proceedings during which Defendant has raised the alleged error of permitting Mrs. Miller not to testify, Defendant has failed to address the issue of her spousal testimonial privilege. *See Miller*, 41 F.4th at 311; Dkt. 180 at 1 n. 1.  Here, again, Defendant fails to substantively address Mrs. Miller's invocation of her spousal testimonial privilege other than a

single sentence asserting without citation to any document or authority that Mrs. Miller waived that privilege and, presumably, arguing that Defendant could have enforced that waiver. Dkt. 318 at 3; *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (holding that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the court"). Nonetheless, the Court reviews Mrs. Miller's invocation of both of her privileges.

The spousal testimonial privilege or adverse spouse privilege is "vested in the witness spouse, who may neither be compelled to testify nor foreclosed from testifying." *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995). The witness spouse may "refuse to testify adversely," *Trammel v. United States*, 445 U.S. 40, 53 (1980), as spousal privilege is a privilege against "taking the witness stand *at all*." *United States v. Pineda-Mateo*, 905 F.3d 13, 25 (1st Cir. 2018) (emphasis in original).[10] Here, Mrs. Miller and Defendant were married at the time of the trial, her testimony would necessarily have been adverse to Defendant based on the nature of her own guilty plea, and the privilege is a privilege against testifying *at all*. To counter this, Defendant argues without citation that Mrs. Miller waived her privilege by pleading guilty in her own criminal case. Mrs. Miller's Plea Agreement does not include her spousal testimonial privilege as among the rights that she would knowingly waive. *United States v. Linda Diane Wallis*, No. 15-cr-285, Dkt. 7. And, at bottom, Mrs. Miller's Plea Agreement is a contract between Mrs. Miller and the government. *See United States v. Martin*, 25 F.3d 211, 217 (4th Cir. 1994) (noting that plea agreements are "governed by the law of contracts"). Defendant is not a party to that agreement and is not an intended beneficiary of that agreement. Thus, even assuming that the plea agreement waived Mrs. Miller's spousal testimonial privilege, it is unclear that *Defendant* could be the one

---

[10] Additionally, unlike other marital privileges, there does not appear to be a joint-participation exception to the spousal testimonial privilege. *See Pineda-Mateo*, 905 F.3d at 25.

to enforce that waiver. *See United States v. Bowman*, 106 F.4th 293, 306 (4th Cir. 2024) (noting that "contracts can be enforced only by the parties to the contract or third parties that the contract makes clear are its intended beneficiaries").

Although no party has provided citation to cases involving similar situations, a recent Fourth Circuit case provides important insight. In *Bowman*, the defendant argued that the district court erred by permitting a witness to invoke her Fifth Amendment right not to testify because she had entered into a plea agreement with the government that waived her "right to remain silent at trial." 106 F.4th at 306. The Fourth Circuit held: "Carr promised *the Government* that she waived her right to remain silent, and nothing in the agreement contemplates Bowman as being the beneficiary of her guilty plea. So Bowman cannot hold Carr to her promise and mandate that she testify." *Id.* at 307 (emphasis in original). So too here where, to the extent that Mrs. Miller waived her spousal testimonial privilege at all, that waiver was only vis-à-vis the government and *Defendant* cannot seek to enforce it. Other courts have reached similar results in the specific context of the spousal testimonial privilege. *See, e.g.*, *United States v. Yerardi*, 192 F.3d 14, 18 (1st Cir. 1999) (holding, where the government sought to overcome the spousal privilege, that a wife did not waive her spousal privilege at trial by testifying during a bail hearing); *United States v. Mitchell*, 2009 WL 103610, at *5 (N.D. Iowa Jan. 15, 2009) (holding that spousal privilege waiver must be knowingly and specifically waived and that the wife did not so waive the privilege by communicating with the government or by testifying before the grand jury); *People v. Petrilli*, 226 Cal.App.4th 814, 826-27 (Cal. App. 4th 2014) (holding that a wife did not waive her spousal testimonial privilege where she testified in a grand jury proceeding, because the husband was not a party to the grand jury proceeding in the same way he was a party to the criminal prosecution).

Thus, this Court finds that Mrs. Miller had not waived her spousal testimonial privilege.[11] Because the spousal testimonial privilege is a privilege not to testify at all, it would have made no difference (and, indeed, would have been inappropriate) for Mr. Hutcheson to suggest that the Court engage in a "question by question" approach. *Pineda-Mateo*, 905 F.3d at 25.

Moreover, Defendant does not dispute that Mrs. Miller properly invoked her other privilege – her right against self-incrimination pursuant to the Fifth Amendment. Rather, Defendant argues that Mr. Hutcheson should have sought to engage in a question-by-question approach. Dkt. 318 at 12. To begin with, Defendant cannot show prejudice because Mrs. Miller had a privilege not to testify at all. But even if Mrs. Miller only exercised her Fifth Amendment privilege, Defendant has not engaged in an analysis that would demonstrate that the testimony he wanted from Mrs. Miller would not be protected by the Fifth Amendment privilege. In particular, with respect to the scope of the conspiracy, the government suggested, and counsel for Mrs. Miller agreed, that Mrs. Miller would be at risk of perjury if she testified as Defendant desired. Dkt. Nos. 243 at 273:21-275:4; 244 at 5:16-23 (Judge Ellis summarized that Mrs. Miller "will be in jeopardy for making a false statement and for perjury" and Mr. Richman responded "Yes, Your Honor"); 180 at 9. Here, Defendant has not addressed how requiring Mrs. Miller to invoke her Fifth Amendment privilege on a question-by-question basis would have been helpful or would have permitted Mrs. Miller to testify on the subjects as he desired.

Finally, even if Mr. Hutcheson had successfully put Mrs. Miller on the stand, any exculpatory effect of this testimony must necessarily be balanced against inculpatory statements

---

[11] This Court also finds, as Judge Ellis did, that Mrs. Miller properly invoked her spousal testimonial privilege because they were married and her testimony would necessarily have been adverse to him with respect to the SkyLink fraud. *See* Dkt. 180 at 12.

that she would be required to make pursuant to her prior testimony and Plea Agreement. Here, Defendant was persisting in his not guilty plea with respect to all counts of the indictment. Dkt. 15 (Defendant pleading not guilty). Mrs. Miller's prior testimony would necessarily connect Defendant with the SkyLink Fraud, which was the subject of 9 Counts in the Indictment. *Compare* Dkt. 1 (charging Defendant with fraud related to SkyLink in Counts 1 and 3-10) *with United States v. Linda Diane Wallis*, No. 15-cr-285, Dkt. No. 8 (Mrs. Miller's Statement of Facts). Defendant cannot show prejudice from the failure of Mrs. Miller to testify where she would inevitably have made inculpatory statements with respect to most of the counts in the Indictment.[12] Moreover, with respect to Count 2 (the money laundering count on which Defendant has focused much of his post-conviction efforts), both the Fourth Circuit and Judge Ellis concluded that there was a "mountain of evidence" supporting Defendant's conviction. *Miller*, 41 F.4th at 315 (holding that "we conclude that it would be unjust to *reverse* Miller's conviction given the 'mountain of evidence' against him") (emphasis in original); Dkt. 180 at 6 ("Here, however, there was a mountain of evidence against defendant.").[13] Here, considering the totality of the evidence,

---

[12] Defendant appears to imply that *Strickland* prejudice should be analyzed on count-by-count basis separate from one another even when the evidence at issue would implicate multiple counts. Defendant only asserts that Mrs. Miller's testimony "probably" would have resulted in a not guilty verdict with respect to the conspiracy charges. Dkt. 302 at 2. But Mr. Hutcheson had to look at all of the counts as to which Mr. Miller was maintaining his innocence and putting Mrs. Miller on the stand would inculpate Defendant as to all of the SkyLink charges. Defendant cites no authority suggesting that prejudice should be evaluated with respect to each individual count even where the evidence at issue is relevant to multiple counts. Indeed, the Fourth Circuit has instructed that the prejudice analysis "requires the court deciding the ineffectiveness claim to 'consider the totality of the evidence before the judge or jury.'" *Elmore v. Ozmint*, 661 F.3d 783, 858 (4th Cir. 2011).

[13] Indeed, it was *Defendant's* testimony that connects him most strongly to the money laundering count on which he has primarily focused his post-conviction efforts. *Miller*, 41 F.4th at 314 (relying on Defendant's testimony that he was "intuitively" aware that his wife was shifting proceeds from fake bank accounts into their personal bank account, apparently to conceal their source, and asserting that there was "ample evidence" to support the money laundering count).

Defendant has not demonstrated any prejudice connected to Mr. Hutcheson's alleged failure to interview or successfully call Mrs. Miller as a witness.[14] [15]

In sum, Defendant cannot demonstrate any prejudice from Mr. Hutcheson's purported failure to interview Mrs. Miller, where Mrs. Miller declined to be interviewed on advice of counsel. Nor can Defendant demonstrate any prejudice from Mr. Hutcheson's purported failure to secure Mrs. Miller's testimony as a witness where Mrs. Miller was called as a witness, was available to appear as a witness, and, on advice of counsel, properly invoked two of her privileges against testifying. Finally, Defendant cannot demonstrate prejudice because, given the totality of the evidence (including Defendant's own testimony and Mrs. Miller's guilty plea), Defendant cannot demonstrate that there would have been a different result had Mrs. Miller testified.[16]

---

[14] Defendant attaches a number of statements purporting to be from Mrs. Miller to both his Motion and his Reply. Dkt. Nos. 302-1; 302-2; 302-3; 318-1; 318-2. The Court has reviewed each of these submissions. The Court notes that, at least some of the statements from Mrs. Miller, upon which Defendant would rely are not helpful and support his convictions under the willful blindness instruction given by Judge Ellis and affirmed by the Fourth Circuit. Mrs. Miller purportedly informed the FBI that: "MILLER does not know anything about the money WALLIS stole from SASLAW because WALLIS handles their (i.e. MILLER's and WALLIS') finances. MILLER never asked WALLIS where she got the extra $600,000 she used to pay for living expenses." Dkt. 302-1. Thus, according to this document, Defendant did not question the sudden appearance of an extra $600,000 at a time when both Defendant and Mrs. Miller were unemployed. *See United States v. Ali*, 735 F.3d 176, 187 (4th Cir. 2013) ("It is well established that where a defendant asserts that he did not have the requisite *mens rea* to meet the elements of the crime but 'evidence supports an inference of deliberate ignorance,' a willful blindness instruction to the jury is appropriate.").

[15] Each of the statements from Mrs. Miller upon which Defendant purports to rely were made well before Defendant's 2019 trial; indeed, most were made in 2014 or 2015. Importantly, Defendant does not provide any statements purporting to be from Mrs. Miller indicating that, despite her counsel's indication to the contrary, she was willing to speak to Mr. Hutcheson in the lead up to or during Defendant's trial or that she was willing to testify despite her invocation of two of her privileges.

[16] Defendant vaguely asserts that "Hutcheson never raised an objection about the denial of his Miller's [sic] Sixth Amendment Right to Compulsory Process with respect to Wallis,

b.  Alleged Prejudice with Respect to Other Allegations

Defendant's remaining allegations of ineffectiveness are "essentially in list format and are repetitive, vague, conclusory, belied by the record, and wholly meritless." *United States v. Walker*, 2017 WL 1528732, at *4 (E.D. Va. Apr. 26, 2017).  For example, Defendant argues that Mr. Hutcheson "rarely objected" and failed to move for a judgment of acquittal with respect to Counts 1-10 but fails to identify a meritorious objection or argument that Mr. Hutcheson did not make, let alone explain how the failure to make any such objection or argument prejudiced Defendant.  Dkt. 302 at 12; Dkt. 318 at 7 (vaguely asserting "Attorney Hutcheson failed to object to this onslaught of testimony").  Similarly, although Defendant attacks Mr. Hutcheson's alleged lack of substantive knowledge with respect to money laundering, forfeiture, and sentencing, Defendant fails to identify any specific failing or any specific prejudice that Defendant suffered as a result of that alleged lack of knowledge.[17]  *See United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013)

───────────────────

effectively forfeiting that ground for appeal." Dkt. 302.  It is unclear to what denial Defendant is referring or what documents Defendant would have sought from her that were unavailable to him at the time of trial.  To the extent Defendant refers to emails or statements from Mrs. Miller, it is apparent that Defendant had Mrs. Miller's statements to the FBI, to his former counsel, and also should have had any communications between Defendant and Mrs. Miller.  Thus, it is unclear what "process" Defendant was denied.  To the extent Defendant means to imply he was denied the opportunity to subpoena her to trial, that argument is moot because Judge Ellis arranged for Mrs. Miller to be available to be called as a witness for trial.  Dkt. Nos. 112 (original order); 114 (amending dates).  In any event, this argument is so unclear that it fails to demonstrate any prejudice at all.

[17] Defendant does specifically argue that Mr. Hutcheson failed to object to the government's closing and Judge Ellis' instructions regarding the conspiracy to commit transactional money laundering; however, Defendant fails to identify any statute or case that supports his argument that the arguments regarding "transactional money laundering" contained misstatements of law.  Dkt. 318 at 7-8.  Pursuant to 18 U.S.C. § 1957, it is illegal for a person to "knowingly engage[] or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000."  As the Fourth Circuit recognized, Defendant was charged with conspiring to commit concealment *and* transactional money laundering.  *Miller*, 41 F.4th at 314.  Moreover, as the Fourth Circuit has held in other cases, a "[m]oney laundering conspiracy" is a "non-over act conspiracy," which "require[s] nothing more than agreement to launder money."

(noting that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). Finally, Defendant's argument that Mr. Hutcheson should have challenged the grand jury process, as Defendant has argued in several other pleadings, is likewise wholly undeveloped.[18]

Although Defendant fails to explain most of his other allegations of ineffective assistances in his Petition (Dkt. 302), out of an abundance of caution, the Court will address those allegations that Defendant more fully explains in his Reply brief (Dkt. 318). To begin with, Defendant raises several arguments that may be generally understood as asserting that Mr. Hutcheson failed to

---

*United States v. Ravenell*, 66 F.4th 472, 482, 486 (4th Cir. 2023). Each of the arguments to which Defendant points emphasize that the jury could find a conspiracy to commit transactional money laundering, if the jury found that Defendant and his wife *agreed* to move fraud proceeds in increments of more than $10,000. Dkt. 318 at 7-8. Accordingly, Defendant cannot establish any prejudice flowing from Mr. Hutcheson's purported lack of knowledge with respect to money laundering. Moreover, Defendant ignores that Defendant was convicted of both objects of the conspiracy in Count 2 – that is concealment money laundering and transactional money laundering – and he does not identify any defect with respect to the instructions as to concealment money laundering here.

[18] Defendant suggests that the government relied on Defendant's joint banking account with Mrs. Miller as evidence supporting the money laundering charge. Dkt. 302 at 5. Defendant does not explicitly state that this was the government's *sole* evidence supporting the money laundering charge and Defendant does not attach the grand jury transcript upon which he purports to rely. Nor does Defendant explain why, with the joint bank statement showing various transactions along with evidence of Mrs. Miller's conspiracy with Defendant as to the SkyLink fraud, the government would not have demonstrated probable cause sufficient to support conspiracy to commit money laundering. Defendant does not specify what challenge Mr. Hutcheson should have brought, nor does he explain why such a challenge would have resulted in dismissal of Count 2 of the Indictment. Interestingly, Defendant also does not explain why his retained counsel, whom Defendant has described as an expert in such matters, did not raise an objection to the grand jury process. Importantly, courts have rejected similar arguments regarding ineffective assistance of counsel with respect to the grand jury process, because, generally, "even if [Defendant] were prosecuted under a defective indictment, which has not been established, there is no evidence that the alleged defects were severe enough to have warranted dismissal of all charged against him *with prejudice*." *United States v. Gooch*, 23 F. Supp. 3d 32, 41 (D.D.C. 2014) (emphasis in original); *see also Appiah v. United States*, 2023 WL 6879040, at *4 (D. Md. Oct. 18, 2023).

29

adequately pursue the motion for a bill of particulars[19] or dismissal of Count 1 of the Indictment based on its charging of a conspiracy with the three objects of the fraud being SkyLink, the Saslaw Campaign, and CCCAID – the so-called "tripartite conspiracy." Dkt 302 at 11; 318 at 2, 5.[20] Although Defendant alleges that it was improper to include all three victims as part of the conspiracy, Defendant does not identify a legal basis by which Mr. Hutcheson could have objected to the indictment and sought its dismissal. Dkt. 317 at 6. Indeed, as the Fourth Circuit has noted, "[t]he Supreme Court has expressly rejected the contention that such a count, containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous." *United States v. Marshall*, 332 F.3d 254, 262 (4th Cir. 2003). On direct appeal, the Fourth Circuit held that the Indictment here fell squarely within this precedent. *Miller*, 41 F.4th at 313 ("That is precisely the situation we have here: one alleged overarching conspiracy – involving the same modus operandi, the same fake entities, the same bank accounts, and the same ends (enriching the Millers) – with three different victims or objects . . . ."). As for the bill of particulars, the government correctly noted in its opposition to that motion that Count 1 was charged as a conspiracy pursuant to 18 U.S.C. § 1349, which "does not contain any overt act requirement," and therefore the government was not required to allege in the indictment specific facts supporting its theory that Defendant conspired with Mrs. Miller to defraud the Saslaw Campaign or CCCAID.

---

[19] Again, it is worth noting that Mr. Hutcheson did argue part of what Defendant asserts here – that the Indictment did not contain sufficient factual allegations connecting Defendant to the Saslaw and CCCAID frauds. Mr. Hucheson's argument was rejected. Dkt. 72.

[20] To the extent Defendant seeks to argue that Mr. Hutcheson failed to object or seek dismissal of the Indictment on some other ground or based on an alleged "constructive" amendment of Count 2, those arguments are wholly conclusory and unclear and appear nowhere in his Reply brief. Accordingly, those arguments are among those that are so vague and conclusory that they require no further investigation from this Court. *Dyess*, 730 F.3d at 359-60.

*United States v. Chinasa*, 489 F. App'x 682, 685-86 (4th Cir. 2012). Thus, Defendant has also failed to meet his burden of establishing prejudice with respect to his general argument that Mr. Hutcheson should have objected to the Indictment.[21]

Defendant also argues that Mr. Hutcheson erred in failing to object to the money laundering and "willful blindness" instructions. Dkt. 302 at 12. Here again, Defendant fails to explain what meritorious objection Mr. Hutcheson overlooked or how Defendant was prejudiced. *Id.* Importantly, Mr. Hutcheson did object to the willful blindness instruction and, indeed, the Fourth Circuit reviewed the instruction for abuse of discretion. *Miller*, 41 F.4th at 314. Thus, Defendant is incorrect when he argues that Mr. Hutcheson "forfeit[ed] that ground for appeal." Dkt. 302 at 12. Moreover, the Fourth Circuit actually determined that the instruction was appropriately given, and Defendant identifies no argument that the Fourth Circuit failed to consider based on Mr. Hutcheson's actions. *Miller*, 41 F.4th at 314. With respect to the money laundering instructions, Defendant again fails to identify any meritorious objection that Mr. Hutcheson could have raised, let alone argued that he was prejudiced by the failure to raise such an objection. Dkt. 302 at 12; Dkt. 318 (not discussing jury instructions).[22]

Although Defendant only mentions the failure to interview Mrs. Miller in his Petition, his Reply brief extends his failure to interview argument to Dan Caplan (who provided a mortgage on

---

[21] To the extent that in his Reply, Defendant for the first time asserts that Mr. Hutcheson failed to properly advise him as to his risks and that he would have accepted the government's plea offer, this raises a new legal theory that is improperly and untimely raised in his Reply. *See, e.g.*, *Mero v. United States*, 2021 WL 3021942, at *6 n.5 (E.D. Va. July 16, 2021); *United States v. Nabaya*, 2022 WL 3581675, at *1 (E.D. Va. Aug. 19, 2022) ("The Court notes that Nabaya cannot add new claims by a passing reference in his reply briefs.").

[22] To the extent Defendant vaguely asserts that Defendant wrote any of his proposed jury instructions or that Mr. Hutcheson failed to have Judge Ellis adopt any particular jury instruction, Defendant fails to identify any individual instruction or explain why the rejection of those instructions was prejudicial.

the Fairfax property), the CEO of SkyLink, and various bank officials. Dkt. 318 at 4. Here, Defendant merely speculates as to what other individuals would have testified and that their testimony would have been exculpatory. Defendant's arguments are unsupported and unpersuasive. First, with respect to SkyLink, a SkyLink representative (Teresa Champion) testified both at trial and during sentencing to give victim impact testimony. Dkt. Nos. 240; 249 at 45:5-7 (Teresa Champion testifying as the designated representative of SkyLink Aviation). Defendant suggests without support that the SkyLink CEO would have provided different testimony than SkyLink's designated representative. Moreover, Defendant suggests that, if he conferred some benefit on SkyLink through his deceitful misrepresentations, then he did not commit fraud. Dkt. 318 at 4. This argument is unsupported by case authority. *See United States v. Doty*, 832 F. App'x 174, 177-78 (4th Cir, 2020) (setting forth elements of mail and wire fraud); *United States v. Wynn*, 684 F.3d 473, 479 (4th Cir. 2012) (citing *United States v. Treadwell*, 593 F.3d 990, 996 (9th Cir. 2010) ("The intent to induce one's victim to give up his or her property on the basis of an intentional misrepresentation causes 'harm' by depriving the victim of the opportunity to weigh the true benefits and risks of the transaction, regardless of whether or not the victim will suffer the permanent loss of money or property.")). Dan Caplan testified at trial and Mr. Hutcheson did elicit some of the evidence which Defendant claims Mr. Hutcheson failed to obtain. *See* Dkt. 243 at 25:10-14 (Mr. Caplan testifying that he never met Defendant). But Defendant cannot demonstrate that there was any prejudice from Mr. Hutcheson's alleged failure to demonstrate that Defendant had not spoken to Mr. Caplan or the bank officials, because the Fourth Circuit has already held that the jury was appropriately instructed regarding willful blindness and because of Defendant's own testimony on the subject. *Miller*, 41 F.4th at 314-15.

Accordingly, to the extent that Defendant's Reply properly raised these issues, the Court finds that they also do not demonstrate prejudice under *Strickland*.

*   *   *

In sum, each of Defendant's arguments regarding Mr. Hutcheson's purported ineffectiveness – to the extent that they are discernable at all – fails to demonstrate that Defendant suffered any prejudice. In particular, with respect to the testimony of Mrs. Miller, Defendant failed to demonstrate: (i) that it was Mr. Hutcheson that failed to interview Mrs. Miller rather than Mrs. Miller refusing to be interviewed; (ii) that Mrs. Miller was willing to testify in light of her proper invocation of her two privileges; or (iii) that Mrs. Miller's testimony would have been helpful.

iii. Performance

Out of an abundance of caution, the Court will also briefly address Defendant's arguments regarding alleged deficiencies in Mr. Hutcheson's performance. To satisfy the performance prong, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" as evaluated "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Here, Defendant can demonstrate no deficiencies in Mr. Hutcheson's performance where, as discussed *supra*, Mrs. Miller both declined to be interviewed, as conveyed by her counsel, and properly invoked two privileges against testifying after she was called as a defense witness. Moreover, counsel's decision not to call a specific witness is "a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which we must afford enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). Given the nature of Mrs. Miller's anticipated testimony, Mr. Hutcheson would not have been deficient in his

33

performance to decline to call Mrs. Miller; but here he did call Mrs. Miller and cannot be faulted for her unwillingness to testify.

With respect to the litany of other accusations that Defendant makes (*i.e.,* whether to challenge the indictment, the admissibility of evidence, the propriety of jury instructions, *etc.*), those decisions fall squarely within the realm of strategic litigation decisions within the purview of trial counsel. *See Armstrong v. United States*, 2013 WL 4400109, at *7 (E.D. Va. Aug. 14, 2013) (holding that "Petitioner's arguments that he received constitutionally ineffective assistance of counsel because counsel's trial strategy did not align with Petitioner's strategy cannot overcome the highly deferential standard given to counsel's performance"). For the most part, Defendant's argument in this regard is that Mr. Hutcheson failed to object or file a motion – *not* that Mr. Hutcheson failed to file a motion or make an objection that would have been *meritorious*. Dkt. 310 at 12-13 (Mr. Hutcheson generally asserting that "[y]ou only want to make objections that have a reasonable chance of being sustained"); *United States v. Wright*, 2013 WL 1729433, at *4 (D.S.C. Apr. 22, 2013) ("Trial counsel's failure to raise a non-meritorious objection does not give rise to a claim of ineffective assistance of counsel."). As the Supreme Court has cautioned, "it is all too tempting for a defendant to second-guess counsel's assistance after conviction"; therefore, "every effort" should be made to "eliminate the distorting effects of hindsight" and to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Here, Defendant fails to identify a meritorious legal theory or meritorious objection that Mr. Hutcheson failed to pursue. Nor has Defendant alleged facts from which one could conclude that Mr. Hutcheson's performance fell below an objective standard of reasonableness. Accordingly, Defendant also fails to establish the second *Strickland* prong.

34

### E. Evidentiary Hearing

"A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [that individual] to relief." *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992) (citing *Townsend v. Sain*, 372 U.S. 293, 312 (1963)) (evaluating § 2255 motion). Here, however, it is clear that none of the facts alleged in the Petition support the determination that Defendant is entitled to an evidentiary hearing. *See Santiago v. United States*, 2023 WL 2720809, at *4 (E.D. Va. Mar. 30, 2023) ("An evidentiary hearing is not required under § 2255 if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"). Moreover, the Court's decision here does not rest on disputed issues of fact or credibility determinations; rather the decision here rests on a review of the trial record and the briefs submitted by the parties. *United States v. Pindle*, 2012 WL 13081023, at *3 (E.D. Va. Oct. 12, 2012) (denying § 2255 motion without an evidentiary hearing where there were no unresolved issues of material fact). Accordingly, no evidentiary hearing is necessary because Defendant has come forward with no evidence or allegations demonstrating that his claims might have merit.

### IV.

Accordingly, it is hereby ORDERED that the Motion to Vacate (Dkt. No. 302) is DENIED and DISMISSED; and it is

FURTHER ORDERED that the Motion for Reconsideration (Dkt. 309) is DENIED; and it is

FURTHER ORDERED that the Motions for Discovery, a Discovery Hearing, and Appointment of Counsel (Dkt. Nos. 302; 303; 323; 324; 325) are DENIED; and it is

35

FURTHER ORDERED that Motions for an Evidentiary Hearing and Appointment of Counsel (Dkt. Nos. 320; 321) are DENIED.

To appeal this decision, Defendant must file a written notice of appeal with the Clerk of the Court within sixty (60) days of the date of the entry of this Memorandum Opinion and Order. Failure to file a timely notice of appeal waives defendant's right to appeal this decision. Defendant must also obtain a certificate of appealability from a judge or justice of this Circuit pursuant to 28 U.S.C. § 2253(c)(1). This Court expressly declines to issue a certificate of appealability for the reasons stated in this Memorandum Opinion and Order.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record for the government and to Defendant, who is proceeding *pro se*, at his last address on file.

The Clerk is further directed to close the related civil action Case No. 23-cv-1434.

It is SO ORDERED.

Alexandria, Virginia
September 11, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge